Filed 12/4/14  In re Damian G. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re DAMIAN G., et al., Persons Coming Under the Juvenile Court Law. | B255740 |
| | (Los Angeles County Super. Ct. No. DK03058) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| Y. R., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Timothy R. Saito, Judge.  Affirmed.

Linda J. Vogel, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel for Plaintiff and Respondent.

Y. R. (mother) challenges the juvenile court's judgment establishing dependency jurisdiction over her two children, Damian (born September 2006) and Devin (born September 2010), pursuant to Welfare & Institutions Code section 300.[1]  Mother contends that substantial evidence does not support the juvenile court's jurisdictional findings as to either child.  We find no error and therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

**October 2013 wandering incidents**

On October 14, 2013, the Department of Children and Family Services (DCFS) received a neglect referral alleging that police were informed by a liquor store employee that then three-year-old Devin had been in the store for a half hour, unsupervised, around 8:00 p.m.  The child wandered away from home and crossed a major intersection by himself before arriving at the liquor store.  Law enforcement informed DCFS that this was the second time in one week that the child had been found wandering unsupervised.  On October 8, 2013, police had been called to a different nearby liquor store because Devin was there alone, unattended.  On both occasions, mother claimed not to know that Devin was missing.

The reporting party indicated that mother did not appear to be caring appropriately for the child because she did not attempt to find a way to prevent the child from getting out of the house, did not seem to notice when the child was missing, and did not seek help from the police when she did notice.

A DCFS social worker arrived at the family's one bedroom apartment unannounced on October 15, 2013.  Mother acknowledged that Devin had crossed a busy intersection to get to the liquor store after following his older sibling, then seven-year-old Damian, downstairs to play.  When the social worker pointed out that Damian was not old enough to supervise Devin, mother agreed and "did not say much."  Mother maintained that she locked her doors but Devin knew how to open the lock.

---

[1]      All further statutory references are to the Welfare & Institutions Code unless otherwise noted.

Devin's father, Ramiro G. (father) arrived home during the social worker's interview with mother.[2]  Father initially told the social worker that she was wasting her time as there was no abuse or intentional neglect.  However, he eventually stated he would get a safety door handle and would not allow Devin to be unsupervised.

On October 22, 2013, DCFS received a referral alleging that on October 18, 2013, Devin was found crossing Martin Luther King Jr. Avenue and 10th Street in Long Beach unsupervised.  Devin was gone from his home for at least 30 minutes after he went out the front door of the home in the middle of the day.  Mother was unaware of Devin's absence because she was sleeping.  The reporting party indicated that there was no safety lock on the door of the home and that mother and father appeared apathetic about the incident.  Devin had apparently left home to look for his maternal grandmother, who lives about four blocks away from the family home.

A DCFS social worker arrived unannounced at the family home that evening, and observed that a lock had been installed out of Devin's reach.  Mother said there was no way that Devin could open the door now that the lock had been installed.

**November 2013 DCFS visit**

On November 14, 2013, a DCFS social worker visited the home unannounced. Devin was home, playing on the sofa and changing the channels on the television.  When the social worker asked to see Damian, mother responded that he was outside playing. However, when she went outside and called for the child, he did not respond.  Mother did not find Damian in their apartment complex.  The social worker accompanied mother to a neighboring apartment complex, but they could not locate Damian there either.  Mother asked a group of children where Damian was, but they did not know.  Eventually a woman came out of her apartment and informed them that Damian was playing in her apartment. Damian said he did not tell his mother where he was because it was not time for him to come home.

---

[2]     Neither father, nor Damian's father Alex G. (Alex), is a party to this appeal.

**Team decision making meeting (TDM)**

On November 19, 2013, a DCFS social worker telephoned mother to attempt to schedule a TDM. Mother responded that she could participate but was not sure about father because he works daily and has a different work schedule every day. The social worker insisted that father be present. Mother agreed to talk to father.

On December 4, 2013, the social worker again attempted to contact mother. After not receiving a call back from mother, the social worker called again on December 12, 2013. Mother apologized for not returning the call and said she and father were willing to participate in a TDM. Mother had a criminal court appearance on December 18, 2013, for the incident involving Devin.

On the December 18, 2013 court date mother received a deferred entry of judgment on a conviction for violation of Penal Code 273a, subdivisions (a) and (b) (child endangerment). She was placed on one year of probation, including 40 hours of community service and 26 hours of parenting classes. Mother began the two-hour classes in January 2014.

The social worker was able to contact mother on December 30, 2013, and a TDM was scheduled for January 9, 2014. During the meeting, mother was very quiet and father was defensive, stating "you're making a little thing into a big thing." As a result of the TDM, it was decided that DCFS would file a petition and the parents would follow through with Regional Center appointments for Devin. In addition, the parents would participate in parenting classes, family preservation services, and mother would follow all criminal court orders.

**Section 300 petition and detention**

On January 15, 2014, DCFS filed a petition on behalf of Damian and Devin pursuant to section 300, subdivisions (b) and (j). Under subdivision (b), the petition alleged that on three prior occasions, mother and father had placed the children at risk of harm by allowing Devin to wander alone without adult supervision across busy streets to neighborhood stores. Under subdivision (j), the petition alleged that the parents' neglect placed Devin's sibling, Damian, at risk of harm.

At the detention hearing held the same day, the juvenile court found that DCFS had set forth a prima facie case that Damian and Devin were described by section 300. The court released the children to parental custody, ordered DCFS to assess the possibility of a section 301 contract, and set the adjudication for April 9, 2014.

**Jurisdiction/disposition report**

DCFS filed a jurisdiction/disposition report in advance of the adjudication. Damian was interviewed and informed the social worker that he often played outside until "late at night" without adult supervision. Mother was also interviewed. She acknowledged the incidents involving Devin wandering away from the home and that "it was wrong" because Devin could have been run over by a car. However, the social worker noted that mother appeared calm and did not show any signs of concern or worry over these past incidents.

DCFS reported that it could not recommend a section 301 contract, based on the fact that Devin was found by law enforcement on three separate occasions wandering the streets unsupervised. DCFS concluded that "if there is no Court supervision the parents will once again become blasé and careless in their supervision of the child, and as such, the child's physical safety cannot be guaranteed." In addition, the father's defensive and uncooperative attitude at the TDM demonstrated that he did not understand the severity of the situation. DCFS recommended that Damian and Devin be declared dependents of the court while remaining under the care of mother and father, with family preservation services in place.

**Adjudication**

At the April 2014 adjudication hearing, counsel for the children asked the court to dismiss the petition, noting that the children were cared for and the parents had taken remedial measures by putting locks on the doors. Father's counsel agreed, stressing that it had been six months since the incidents that led to the filing of the petition, and no subsequent wandering events had occurred.

County counsel acknowledged that nothing has happened since October 2013, but argued that the issues that led to those events had not been adequately addressed. County

5

counsel argued that DCFS "wants the children to remain with the parents, but . . . want[s] programs to be completed. Until they are completed, [DCFS] believes the children are at risk."

The juvenile court sustained the petition, emphasizing that Devin was found wandering on three separate occasions. The court explained:

> "The first time, maybe there was no risk and maybe no one was perfect. The second time, maybe there was more risk, but no one's perfect. The third time, there's a definite pattern . . . there's a pattern . . . that needs to be addressed to make sure these children, who are of a young age in this case, are going to be appropriately cared for and addressed so that it doesn't happen again."

The court ordered Devin and Damian placed in the home of mother and father, ordered father to participate in a parenting class and ordered mother to comply with all criminal court orders. The court set a contested dispositional hearing only as to Damian's father, Alex, for May 21, 2014; ordered a progress report and hearing for July 9, 2014, to address possible termination of jurisdiction; and set a six-month review hearing for October 2014.

On April 16, mother filed a notice of appeal of the April 9, 2014 order sustaining the petition.

**Postjudgment event**

On August 14, 2014, the juvenile court terminated jurisdiction over Damian with the April 9, 2014 home-of-parent order to remain in full effect. The court granted joint legal and joint physical custody to mother and Alex, with the child's primary residence to be with Alex. Devin remained a dependent of the court with a progress hearing calendared for September 23, 2014.

## DISCUSSION

### I. Standard of review

Challenges to a juvenile court's jurisdictional findings are reviewed for substantial evidence. (*In re P.A.* (2006) 144 Cal.App.4th 1339, 1344.) "When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must

6

determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.] In dependency proceedings, a trial court's determination will not be disturbed unless it exceeds the bounds of reason. [Citation.]" (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.)

## II. Mootness as to Damian

We first address DCFS's argument that the appeal is moot as to Damian because the juvenile court terminated jurisdiction over the child on August 14, 2014. DCFS cites *In re C.C.* (2009) 172 Cal.App.4th 1481, 1488 for the proposition that, "[a]s a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot. [Citation.]" However, as the *C.C.* court pointed out, "dismissal for mootness in such circumstances is not automatic, but 'must be decided on a case by case basis.' [Citations.]" (*Id.* at p. 1488.) In particular, "'An issue is not moot if the purported error infects the outcome of subsequent proceedings.' [Citation.]" (*Ibid.*)

In this case, mother points out that in its order dismissing jurisdiction over Damian, the court placed Damian with his previously non-custodial father, who lives out of state, and granted mother visitation under a schedule that is not in the record. Mother argues that but for the juvenile court's assertion of jurisdiction over Damian, Damian's primary residence with mother would have remained unchanged. Mother claims that as a result of the juvenile court's assertion of jurisdiction over Damian, she lost primary custody of this child.

The reporter's transcript of the subsequent proceedings involving Alex are not part of the record on appeal. Therefore, it is impossible for this court to ascertain whether the trial court's decision to take jurisdiction of Damian affected its ultimate decision to place Damian with his father. Therefore, we decline to find mother's arguments moot as to Damian and instead consider the merits of her appeal as to both children.

**III. Substantial evidence supports the finding under section 300, subdivision (b)**

Section 300, subdivision (b) permits the juvenile court to take jurisdiction over a child who is suffering, or is at risk of suffering, serious physical harm or illness resulting from the inability of his parent to supervise and protect him. (§ 300, subd. (b).) The three elements for a section 300, subdivision (b) finding are: "'(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the [child], or a "substantial risk" of such harm or illness.' [Citation.]" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1396, quoting *In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.)

The third element "effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur). [Citations.]" (*In re Savannah M., supra*, 131 Cal.App.4th at p. 1396.) Proof of current risk of harm at the time of the jurisdictional hearing is not required to support the initial exercise of jurisdiction under section 300, subdivision (b). The standard is met by a showing that the child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or abuse. (*In re Adam D.* (2010) 183 Cal.App.4th 1250, 1261.)

Mother argues that evidence of a substantial risk of harm did not exist as to either child at the time of the jurisdictional hearing. Here, mother argues, the evidence was that three-year-old Devin was at substantial risk of physical harm in October 2013, when he wandered unsupervised on three occasions during the month. However, mother argues, the evidence showed that she took significant remedial actions by installing two locks on the door that Devin could not reach or manipulate. In addition, mother took steps to enroll Devin in preschool to offer him more structure and stimulation. Finally, mother argues, by the time of the jurisdictional hearing, mother and father begun to continuously observe Devin while he played outside. Thus, mother argues, by the time of the jurisdictional/dispositional hearing in April 2014, six months after Devin's wandering incidents, the record contained no evidence to allow a reasonable inference that Devin's

wandering would reoccur. As a result, Devin and Damian were no longer at substantial risk of physical harm.

As we must, we view the evidence in a light most favorable to the juvenile court's action, accepting every reasonable inference that the court could have drawn from the evidence. (*In re S.C.* (2006) 138 Cal.App.4th 396, 415.) Under this standard, we find that the record contains sufficient evidence that Devin and Damian were at substantial risk of harm at the time of the jurisdictional hearing. The juvenile court found that mother engaged in a pattern of neglect, allowing then three-year-old Devin to wander the neighborhood, crossing busy streets and spending time unsupervised in public places. Mother acknowledged the danger of the situation. However, mother did not appear to notice that the child was missing, and did not seek help from the police. When later interviewed, mother did not show any signs of worry or concern over these incidents. In fact, as late as December 2013, a doctor at the Regional Center who assessed Devin, observed that "both parents seemed really lax about the whole situation and mother appears to not fully process the seriousness of this situation."

In addition, the record shows that mother was not adequately supervising Damian. When a social worker made an unannounced visit in November 2013, mother could not locate seven-year-old Damian. The social worker helped mother locate Damian, but they could not find him in mother's apartment complex or the neighboring complex. A neighbor finally appeared and informed them that Damian was inside her apartment. In an interview, Damian stated he often played outside "until late at night" without adult supervision. The November 2013 incident occurred after mother installed the locks on the door. Thus, the installation of the lock did not signal a significant change in mother's behavior. She continued to allow her young children to be unsupervised in potentially dangerous situations.

Sufficient evidence exists to support the juvenile court's finding that mother's neglectful behavior was a pattern of behavior. The juvenile court did not err in determining that the children were at substantial risk of physical harm at the time of the

9

jurisdictional hearing, and that jurisdiction was warranted until such time as mother completed the necessary programs to address the neglectful behavior.

**IV. Substantial evidence supports the finding under section 300, subdivision (j)**

"'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Thus, because the evidence supports the jurisdictional finding under section 300, subdivision (b) as to both children, we may affirm the judgment without considering mother's claims that the evidence does not support the jurisdictional finding under section 300, subdivision (j). (*In re Jonathan B.* (1992) 5 Cal.App.4th 873, 875.)

However, we note that there was sufficient evidence to sustain jurisdiction under section 300, subdivision (j). Under this subdivision, jurisdiction is warranted when a child's sibling comes under section 300, subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected as defined in those subdivisions. (§ 300, subd. (j).) As discussed above, mother's neglect put Devin at substantial risk of physical harm as defined under section 300, subdivision (b). Mother provided inadequate supervision to Devin, allowing him to roam busy city streets unattended. The juvenile court did not err in finding a substantial risk that Damian, who is only four years older than Devin, would be neglected similarly to Devin. In fact, the evidence supported such a finding. Damian had also been allowed to play with others unsupervised by his mother, and, according to his own testimony, was allowed to do so until "late at night." The juvenile court did not err in determining that Damian's physical safety was in danger from mother's inattentiveness.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
BOREN


_____, J.
HOFFSTADT

11